UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

Anthony Clark
3318 Lansbury Village Dr. #1
Chamblee GA 30341,

        Plaintiff,

vs.                                                                                                                  CASE NO. 16-CV-139

City of La Crosse/La Crosse Police Department
400 La Crosse Street
La Crosse WI 54601,

        Defendant.

## COMPLAINT

The plaintiff, Anthony Clark, by his attorneys O'FLAHERTY, HEIM, EGAN & BIRNBAUM, LTD., by Attorneys James G. Birnbaum and Jessica T. Kirchner, states the following as his complaint against the defendant named above.

### JURISDICTION

This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Jurisdiction of the court is pursuant to 28 U.S.C. § 1331.

### PROCEDURAL REQUIREMENTS

1.    Plaintiff has timely filed a complaint with the Wisconsin Department of Workforce Development – Equal Rights Division, and cross-filed with United States Equal Employment Opportunity Commission alleging discrimination based on race and retaliation for having opposed discriminatory practices.

2. Plaintiff has received a right to sue notice from the United States Equal Employment Opportunity Commission, in reference to EEOC Charge Nos. 26G-2014-00767 and 26G-2015-00285, both dated December 15, 2015.

## PARTIES

3. Plaintiff hereby restates and incorporates by reference each of the allegations contained in paragraphs 1 – 2.

4. Plaintiff Anthony Clark (hereinafter "Plaintiff") is an adult resident currently of the State of Georgia, residing at 3318 Lansbury Village Dr. #1, Chamblee GA 30341. At all times relevant to the matters asserted herein, Plaintiff was an adult resident of the State of Wisconsin and resided in the City of La Crosse.

5. Defendant City of La Crosse/La Crosse Police Department is upon information and belief, a governmental corporation, and the Police Department thereof specifically being a municipal law enforcement agency, with its principal place of business at 400 La Crosse Street, La Crosse, Wisconsin 54601.

## FACTS

6. Plaintiff hereby restates and incorporates by reference each of the allegations contained in paragraphs 1 – 5.

7. Plaintiff was employed by Defendant City of La Crosse with its Police Department (hereinafter "Defendant") from March 28, 2011, until October 28, 2015.

8. Throughout Plaintiff's employment with Defendant, he was employed within the Police Department as a police officer.

9. Plaintiff received positive annual performance appraisals and commendations

for successful job performance.

10. Plaintiff's performance within the Department was consistently one of the highest and most productive.

11. Plaintiff was subjected to persistent racial harassment from coworkers and supervisors, which included the following:

    a. Plaintiff has been subjected to comments about him being "white on the inside,"

    b. Plaintiff has been called a "house dog"

    c. Plaintiff has been in conversations during which his white co-workers and supervisors have used the word "jigaboo" to describe the Black officers in the Department

    d. Plaintiff was asked by a coworker if Plaintiff had used a permanent black marker for his "skin pigmentation" after the coworker smelled permanent marker, and was thereafter subjected to the coworker's story about a previous Black colleague (at a different job, unrelated to the City of La Crosse) who he (and other coworkers) had smeared black colored boot polish over lighter spots on the victim's skin

12. Plaintiff filed an internal harassment complaint after a banana was left in his Department locker at the police garage, the implication of which was another racially derogatory reference to his being a "monkey."

13. Plaintiff filed his race harassment complaint with the Chief of Police.

14. Plaintiff was never timely notified about any investigation taking place into his

race harassment complaint and was never himself interviewed about the incident.

15. However, well after the incident, Plaintiff was informed that an investigation was allegedly conducted but revealed no substantiation of racially harassing conduct.

16. Plaintiff also complained about Defendant's grooming policy as being discriminatory, because of the impact that shaving has on his skin, which is the example of a uniformly applied yet discriminatory employment policy on the Equal Employment Opportunity Commission's webpage.

17. Plaintiff was only "excused" from compliance with the policy only upon his furnishing a note from his physician.

18. Plaintiff has been denied training for a variety of matters and various advancement opportunities in favor of less qualified officer with less tenure in the Department.

19. Plaintiff's requests for education and training have been denied in favor of less qualified officer with less tenure in the Department.

20. Similarly, Plaintiff has been denied acceptance for the ERT and has been denied a community police officer position in favor of less qualified officer with less tenure in the Department.

21. Plaintiff has been informed by more senior officers that Defendant's administrators had stated that Plaintiff was a trouble maker and should be watched.

22. Despite that Plaintiff has made complaints about the race harassment he has suffered, Defendant has failed to address the harassment and remediate the environment in the Department.

23. To the contrary, Plaintiff has been retaliated for having complained of racial

harassment.

24. Plaintiff has additionally been instructed by his supervisors to not report any complaint to the City of La Crosse's Human Resources Department.

25. After Plaintiff retained counsel and filed a formal complaint of harassment with Defendant through counsel, however, Defendant undertook a campaign of retaliation against Plaintiff.

26. Immediately after the filing of Plaintiff's complaint through retained counsel, Defendant reassigned Plaintiff to a new partner, who was the main perpetrator of the harassment against Plaintiff, who had been identified to Respondent in Plaintiff's complaint to Defendant.

27. Secondly, after having made his harassment complaint to Defendant, Plaintiff was reprimanded for having garbage in his squad car, which the reprimanding officer acknowledged was not garbage that was placed or left in the squad car by Plaintiff.

28. Consequently, despite knowing that Plaintiff was not responsible, Defendant disciplined him nonetheless for a white officer's conduct.

29. Finally, agents from Defendant's Human Resources Department and Police Department purported to spearhead the "investigation" into Plaintiff's racial harassment, but instead conducted an investigation of Plaintiff, rather than his complained of harassment.

30. They contacted, via their personal Facebook pages, a Black police officer from a neighboring municipality's police department, saying "I know that you are one of three black officers in the County [of La Crosse]," and commented to the witness that Officer Clark had filed a racial harassment complaint only because he is "concerned about his image."

31. Finally, they purported to put a "gag order" on the witness by telling her that "to

ensure the integrity of the La Crosse Police Department" she was "not to tell anyone about this conversation."

32. As a result of the above, Plaintiff filed a race harassment and retaliation complaint with the State of Wisconsin Equal Rights Division, cross filed with the US Equal Employment Opportunity Commission, on April 21, 2014, which was assigned case numbers CR201401194, EEOC case number 26G201400767C, respectively.

33. The media in La Crosse, Wisconsin, reported about the filing of Plaintiff's complaint on August 29, 2014.

34. From that point, Defendant's campaign of retaliation accelerated and Plaintiff was subjected to unwarranted internal investigations and scrutiny that was designed to harass and intimidate him for having opposed Defendant's unlawful employment practices.

35. These actions of additional discrimination/retaliation include but are not limited to the following:

   a. Defendant has refused to disclose to Plaintiff the identity of those officers and supervisors who Defendant concluded engaged in improper racial conduct, and has refused to provide Plaintiff with a complete version of the investigation report that resulted from Plaintiff's internal harassment complaint;

   b. On October 7, 2014, Plaintiff was, for the first time, informed that he was being investigated for his actions in the early morning hours of August 31, 2014 (less than 48 hours of the publication of his charges but 40 days after the events being investigated).

   c. Plaintiff was informed that he was to appear on October 27, 2014 but was

specifically ordered to not speak with three officers in the meantime. He was informed that he potentially violated at least fourteen (14) violations with no explanation whatsoever of what or who had filed a complaint or any clue of what improper conduct he was alleged to have done. He was informed that two Departmental supervisors would be present.

d. Prior to the "interview," on Thursday, October 23, 2014, at 1:26 p.m., Plaintiff's attorneys questioned Defendant about whether any attorneys would be present for this interrogation. By email at 4:03 p.m. on October 23, Plaintiff and Plaintiff's counsel were assured no attorneys would be present. However, at 12:04 p.m. on Friday, October 24, 2014, less than five and a half working hours before the interrogation was to occur, we were informed for the first time that Attorney James Korom would be attending on behalf of the City. When Plaintiff objected to the unrealistic short notice, Plaintiff was threatened. Only after intervention by Plaintiff's counsel was the interrogation postponed until Friday, October 31, 2014.

e. On Friday, October 31, 2014, at the interrogation, Plaintiff learned for the first time that he was being criticized for:

(1) Consistent with his duties in community policing, having a duty related conversation with an African American person who may have been involved in crimes in the La Crosse Community.

(2) Failing to log in the contact and content of that conversation with this person although there were legitimate police related reasons for not doing so, reasons routinely exercised by white officers.

(3) Acknowledging but not participating in unsolicited comments by African American citizens regarding Plaintiff's discrimination complaints.

(4) For not interrupting the above discussion and immediately going to a bar where a gun was found in a toilet unrelated to any immediate threat and a call which was timely responded to by another police officer whose beat included the bar, pursuant to department policy, which requires at least two officers to enter a bar. That request would have violated that departmental policy.

(5) For Plaintiff's physical posture in stopping a car at the request of dispatch merely for identification purposes of an African American Plaintiff knew and who posed no threat.

(6) Failing to issue this African American a citation because his license was suspended although there was no basis to stop the car other than the ID. He was sober with a car full of intoxicated people he was taking home at bar time, was at all times cooperative and finally who could not afford this citation. Such discretion is exercised by white officers on white citizens routinely.

(7) In spite of the above circumstances, allowing the African American to drive home, although his license was suspended. Such discretion is likewise routinely exercised by white officers with white citizens.

(8) Failing to inform this African American's probation officer that he received a non-criminal civil forfeiture warning.

(9) Failing to take Plaintiff's microphone with him on a stop although it was dead and useless, an occasion routinely experienced by white officers.

(10) Using the expletive "fuck it" privately in Plaintiff's squad car when his squad microphone was dead and he personally expressed his frustrations in not being able to take it with him on a stop.

36. This interrogation was threatening, offensive, and harassing.

37. It occurred after Plaintiff had completed the third shift with no sleep, interrupted by Plaintiff's required Court appearance at a preliminary hearing, and again resumed.

38. This interrogation spanned from 9:30 a.m. until 1:45 p.m.

39. When Plaintiff inquired who had complained about him or who in the department was involved in this investigation, Defendant declined to disclose their identities.

40. On November 24, 2014, at 4:45 p.m., Plaintiff was issued a written reprimand related to the events of August 31, 2014.

41. This 3-month-tardy reprimand arises out of events within days of the publication of Plaintiff's discrimination charges in the local media, which included mention of Plaintiff's charges and for actions routinely engaged in by white officers without disciplinary consequences.

42. Defendant has refused to identify Plaintiff's accusers in this incident and the officers and supervisors who the City concluded engaged in improper racial conduct.

43. These ongoing actions are discriminatory on the basis of race and retaliation because Plaintiff filed a complaint and opposed discriminatory practices.

44. Defendant has fly-specked Plaintiff's records, video and audio, searching for

infractions and criticized actions which are routine for other white officers in the department.

45. As a result of the accelerated retaliation resulting from the filing of Plaintiff's discrimination complaint with the Wisconsin Equal Rights Division, cross filed with the US Equal Employment Opportunity Commission, Plaintiff filed a second race discrimination and retaliation complaint with the Wisconsin Equal Rights Division, which was again cross filed with the US Equal Employment Opportunity Commission, on December 15, 2014, which was assigned case numbers CR201403793, EEOC case number 26G201500285C, respectively.

46. Due to the emotional distress, shame, humiliation, pain and suffering, and mental anguish caused by the race harassment and retaliation Plaintiff was required to take a Family and Medical Leave Act leave commencing on April 22, 2015, because his medical providers deemed an absence from work necessary for his medical condition.

47. By not later than September 2015, Plaintiff's medical providers had concluded that he was totally disabled from employment in law enforcement due to his medical condition, including persistent depressive disorder and anxiety disorder/post traumatic stress disorder, which precluded him from being able to return to work for Defendant.

48. Plaintiff has exhausted the Family and Medical Leave Act leave to which he was entitled and the personnel leave under Defendant's employment policies.

49. On October 28, 2015, Plaintiff's employment with Defendant was terminated for non-disciplinary medical reasons.

FIRST CAUSE OF ACTION:  RACE DISCRIMINATION, 42 U.S.C. § 2000e-2(a)(1)

50. Plaintiff hereby restates and incorporates by reference each of the allegations contained in paragraphs 1 – 49.

51.     As a result, Defendant discriminated against Plaintiff on the basis of his race, in the terms and/or conditions of Plaintiff's employment, in violation of 42 U.S.C. § 2000e-2(a)(1).

SECOND CAUSE OF ACTION:  RETALIATION, 42 U.S.C. § 2000e-3

52.     Plaintiff hereby restates and incorporates by reference each of the allegations contained in paragraphs 1 – 51.

53.     As a result, Defendant retaliated against Plaintiff for having opposed discriminatory practices in the workplace, in violation of 42 U.S.C. § 2000e-3.

CLAIMS FOR RELIEF

54.     Plaintiff hereby restates and incorporates by reference each of the allegations contained in paragraphs 1 – 53.

55.     Defendant violated Plaintiff's right to be free from discrimination on account of his race, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq., and caused injuries, damages and harm to Plaintiff, including, but not limited to past and future economic loss, past, present and future non-economic loss, including emotional distress, loss of reputation, shame, humiliation, pain and suffering, mental anguish, impairment in the quality of life and consequential losses.

56.     Defendant violated Plaintiff's right to be free from retaliation for having opposed discriminatory practices in the workplace, pursuant to Title VII of the Civil Rights Act of 1964, pursuant to 42 U.S.C. § 2000e-3 et seq., and caused injuries, damages and harm to Plaintiff, including, but not limited to past and future economic loss, past, present and future non-economic loss, including emotional distress, loss of reputation, shame, humiliation, pain and

suffering, mental anguish, impairment in the quality of life and consequential losses.

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

A. For compensatory and punitive damages, in amounts to be determined.

B. For the costs, disbursements and reasonable attorneys fees incurred in the prosecution of this action.

C. For such other and further relief as the court deems just and proper.

Dated this 7th day of March, 2016  O'FLAHERTY, HEIM, EGAN & BIRNBAUM, LTD.
Attorneys for Plaintiff

s/ Jessica T. Kirchner
_____
James G. Birnbaum, jbirnbaum@lacrosselaw.com
State Bar No. 1014866
Jessica T. Kirchner, jessica@lacrosselaw.com
State Bar No. 1047156
201 Main Street, Suite 1000
La Crosse, WI  54601
Telephone: 608-784-1605
Facsimile: 608-784-1605

**THE PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY.**